## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **CORNELL D. BUTLER** | **CIVIL ACTION** |
| **VERSUS** | **NO. 19-12004** |
| **DARRELL VANNOY, WARDEN, ET AL.** | **SECTION "M" (4)** |

## REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

## I.    Factual Background

The petitioner, Cornell Butler ("Butler"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On July 19, 2012, Butler was charged by a bill of information in Jefferson Parish with second degree murder and two counts of intimidating or impeding a witness by force or threats with the intent to influence his testimony.[3] Butler entered

---

[1] Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2] Rec. Doc. No. 3.

[3] St. Rec. Vol. 1 of 7, Bill of Information, 7/19/12. Co-defendant Koby Dillon was also indicted for two counts of intimidating or impeding a witness by force or threats with the intent to influence his testimony and one count of possession of a handgun while in possession of marijuana. He ultimately pled guilty. The bill of information was amended on February 18, 2014, to correct the spelling of the murder victim's name. St. Rec. Vol. 1 of 7, Amended Information, 2/18/14.

pleas of not guilty in the case.[4]  Defense counsel filed a motion to sever the counts which was heard by the Trial Court on December 20, 2013 and denied.[5]

The record reflects that,[6] Officer Kenneth Goodman of the Jefferson Parish Sheriff's Office responded to a call regarding gunshots at 244 Church Street in Avondale, Louisiana, on April 18, 2012.  The victim, later identified as Durrell Dearmas ("Dearmas"), who was unresponsive and appeared to have suffered several gunshot wounds, was lying in the driveway between two cars. Seven, fired, nine-millimeter caliber, cartridge casings were recovered from the crime scene, and Jene Rauch, a firearm expert, testified all seven cartridge casings were fired from the same weapon. Dr. Dana Troxclair, a forensic pathologist, testified that the victim had seven gunshot wounds and died from fatal wounds to his head, neck and chest.

Dearmas was murdered in front of Arthur Veal's ("Veal") house.  An investigation by Detective Rhonda Goff of the Jefferson Parish Sheriff's Office, revealed that Veal allowed Dearmas to sell drugs in front of his house in exchange for Dearmas providing Veal with drugs. Veal saw Butler in front of his house approximately five minutes prior to the murder.  Veal then entered his home, after which he heard gunshots.  Veal did not witness the murder.

Darrell Thomas ("Thomas"),[7] a/k/a "Big Round," who lived across the street and three houses down from Veal, called 911 and stated he witnessed the murder.  According to Thomas,

---

[4]St. Rec. Vol. 1 of 7, Minute Entry, 7/26/12.

[5]St. Rec. Vol. 1 of 7, Minute Entry, 12/20/13; St. Rec Vol. 4 of 7, Hearing Transcript, 12/20/13.  Butler's motion to sever is not included in the record.

[6]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Butler*, 171 So.3d 1283 (La. App. 5th Cir. 2015); St. Rec. Vol. 6 of 7, 5th Cir. Opinion, 15-KA-89, 7/29/15.

[7]The trial transcript refers to Thomas as "Durrell."  St. Rec. Vol. 5 of 7, Trial Transcript, p. 2, 2/20/14; St. Rec. Vol. 6 of 7, Trial Transcript (con't), pp. 210, 231-32, 2/2014.  However, the Bill of Information refers to the victim in Count Three as "Darrell Thomas."  St. Rec. Vol. 1 of 7, Bill of Information, 7/19/12 (amended 2/18/14).

Butler and seven or eight other people were on his side patio. Butler had a gun under the right shoulder of his white shirt. Thomas heard that the police were on their way; so, he went inside his home and told the others to shut his gate when they left. The others left, and Thomas saw Butler walk to Veal's home. Soon after, Thomas heard a gunshot and ran to his home's front bay window. Thomas testified he saw Butler shoot Dearmas several times. Thomas identified Butler from a six-pack photographic lineup.

Detective Goff interviewed Veal and Thomas who both provided her with the same address for Butler on Glen Della Drive, where Butler resided with his grandmother. Detective Goff secured a search warrant for the Glendella address the morning after the murder. Butler's grandmother identified his bedroom during execution of the search warrant wherein officers located a concealed compartment in the wall of Butler's closet. Officers recovered live nine-millimeter caliber ammunition, a twenty-two caliber banana-styled clip magazine from a twenty-two caliber rifle, "380 auto cartridges," "Monarch 38 Special" ammunition, and a "Winchester .45 auto cartridge," most of which was found in the concealed compartment.

Butler turned himself in to the police. According to Detective Goff, Butler provided a recorded statement after she read him his *Miranda* rights, which was played for the jury. Butler claimed he was somewhere else at the time of the murder and provided the first names of people he was allegedly with, including "Lorenzo," his girlfriend Megan, and the names of some of his sisters. He, however, did not provide last names, phone numbers, or addresses for any of the persons. Butler also stated he was with his brother Preston Butler, also known as "Tootie," when the murder occurred. However, when Detective Fernandez spoke to Preston Butler, he refused to provide an alibi for Cornell Butler.

Following his arrest, Butler's jail phone conversations were recorded. Portions of those calls were played for the jury. During one of the phone conversations, Butler placed himself at the crime scene at the time of the murder. Butler told various individuals to contact Thomas and Veal. He told someone to "[h]oller at that boy, Big Round" and told his girlfriend, Kiera, to speak with "Big Round" and advised her where to find him. During a conversation with his brother, Preston, Butler stated, "I need you to do something for me," to which his brother responded, "Oh, you mean holler at those people Kiera told me." During a phone conversation on April 22, 2012, Butler stated "if those witnesses come, they're going to lock me up; if they testify, that's it, I'm gone."

On April 23, 2012, Butler asked his brother, "Hey, can you get me some tools, can you get me some tools that I'll be Gucci with?" The following morning, Veal and a friend were sitting in a truck in front of Veal's home when Veal saw three people on the other side of the street with guns aimed at him. Veal attempted to flee and was shot in the back.

On the evening of April 25, 2012, Thomas saw five or six people wearing hoodies outside of his house, one of whom had a gun. Thomas recognized the people as friends and associates of Butler and did not open his door. The people left a newspaper article at his door about a murder witness who was killed.

On May 6, 2012, during another phone conversation, someone told Butler "we saw Arthur Veal walk outside, you know, you know how it went." During a telephone conversation on May 30, 2012, Butler stated, "Art, if Art, that boy come in, I'm over with."

Butler was tried by a jury on February 18, 2014 to February 21, 2014, and was found guilty as charged.[8] On March 20, 2014, the Trial Court sentenced Butler to life imprisonment at hard

---

[8]St. Rec. Vol. 1 of 7, Trial Minutes, 2/18/14; Trial Minutes 2/19/14; Trial Minutes, 2/20/14; Trial Minutes, 2/21/14; Verdict, 2/21/14; St. Rec. Vol. 4 of 7, Trial Transcript, 2/18/14; St. Rec. Vol. 5 of 7, Trial Transcript (con't)

labor without the benefit of parole, probation, or suspension of sentence as to the second degree murder conviction, and forty years at hard labor as to each count of intimidation of a witness, all sentences to be served consecutively.[9]

On September 11, 2014, Butler submitted pro se to the Trial Court an application for post-conviction relief and brief seeking an out of time appeal.[10]  On September 25, 2014, the Trial Court granted Butler's request for an out of time appeal and denied his application for post-conviction relief without prejudice.[11]

On direct appeal, Butler's appellate counsel asserted three errors:[12] (1) the Trial Court erred in failing to sever the offenses; (2) the Trial Court erred in admitting "other crimes" evidence; and (3) the Trial Court erred in imposing an excessive sentence.  Butler, requested and was granted, time to file a supplemental brief, but the record does not reflect that he ever filed one.[13]  The Louisiana Fifth Circuit affirmed the convictions finding no merit in the issues raised, but remanded the case for correction of the Louisiana Uniform Commitment Order.[14]  On August 11, 2015, the Trial Court corrected the Uniform Commitment Order.[15]

---

2/18/14; Trial Transcript, 2/19/14; Trial Transcript, 2/20/14; St. Rec. Vol. 6 of 7, Trial Transcript (con't), 2/20/14; Trial Transcript, 2/21/14.

[9]St. Rec. Vol. 1 of 7, Sentencing Minutes, 3/20/14; St. Rec. Vol. 6 of 7, Sentencing Transcript, 3/20/14.

[10]St. Rec. Vol. 1 of 7, Uniform Application for Post-Conviction Relief, 9/18/14 (postmarked 9/11/14).

[11]St. Rec. Vol. 1 of 7, Order, 9/25/14.

[12]St. Rec. Vol. 6 of 7, Appeal Brief, 2015-KA-0089, 3/2/15.

[13]St. Rec. Vol. 6 of 7, Original Motion for Leave and Extension to File Pro Se Supplemental Appeal and Copy of Trial Record, 15-KA-0089, 3/9/15; 5th Cir. Order, 15-KA-89, 3/25/15.

[14]*State v. Butler*, 171 So. 3d 1283 (La. App. 5th Cir.  2015); St. Rec. Vol. 6 of 7, 5th Cir. Opinion, 15-KA-89, 7/29/15.

[15]St. Rec. Vol. 2 of 7, Minute Entry, 8/11/15; Uniform Commitment Order, 8/11/15.

On October 10, 2016, the Louisiana Supreme Court denied Butler's related writ application without stated reasons.[16] His conviction was final under federal law ninety (90) days later, on January 9, 2017,[17] when he did not file a writ application with the United States Supreme Court. *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); U.S. Sup. Ct. Rule 13(1).

In the interim, Butler filed a motion for production of documents seeking all police reports and the District Attorney file.[18] On December 8, 2016, the Trial Court denied the motion and directed Butler to request the records pursuant to the Public Records Act, La. Rev. Stat. § 44:1 *et seq.*[19]

On September 22, 2017, Butler submitted pro se to the Trial Court an application for post-conviction relief and brief in which he raised the following grounds for relief:[20] ineffective assistance of counsel in failing to (1) lodge a contemporaneous objection during voir dire examination; (2) object during opening statement when the prosecution told the jury Butler asked his brother to give him an alibi; (3) object during closing argument when the prosecution referred to Butler as a "street thug" that needed to be removed from free society; (4) object when the

---

[16] *State v. Butler*, 207 So. 3d 408 (La. 2016); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2015-KO-1608, 10/10/16; La. S. Ct. Application for Writ, 15 KO 1608, 8/27/15 (dated 8/19/15).

[17] The ninetieth day was Sunday, January 8, 2017. The deadline therefore fell to the next business day, Monday, January 9, 2017. *See* La. Code Crim. P. art. 13 (weekends and holidays not included in calculation when it would be the last day of the period); Fed. R. Civ. P. 6(a)(2)(C).

[18] St. Rec. Vol. 2 of 7, Motion for Production of Documents, 12/1/15 (postmarked 11/28/15).

[19] St. Rec. Vol. 2 of 7, Order, 12/8/16.

[20] St. Rec. Vol. 2 of 7, Application for Post-Conviction Relief, 9/27/17 (dated 9/22/17).

6

prosecution elicited false testimony from Darrell Thomas; (5) impeach Thomas with his criminal record; (6) object when the prosecution vouched for the credibility of Detective Goff; (7) investigate and subpoena Goff's records from the Jefferson Parish Sherriff's Office; (8) move to suppress the jail telephone conversations; (9) move to suppress Goff's twenty-minute pre-interview with Butler; (10) object and move to reconsider the consecutive sentences.

Butler filed a request for free copies of documents including:[21] (1) the Clerk's Office file; (2) grand jury testimony of Darrell Thomas and Detective Goff; (3) the District Attorney file; and (4) the personnel files of Detective Goff. He requested that counsel be appointed to assist him.[22] He also requested an additional thirty days to supplement his application.[23] On October 11, 2017, the Trial Court denied Butler's request for documents finding that he was not entitled to production of the grand jury transcripts and he should seek the other records pursuant to the Public Records Act, La. Rev. Stat. § 44:1 *et seq*.[24] The Trial Court denied Butler's request for appointment of counsel but permitted him to supplement his petition and ordered the State to file a response.[25] The record does not reflect that Butler ever filed a supplemental petition.

On February 5, 2018, the State filed a response claiming that Butler's claim relating to ineffective assistance of counsel at sentencing was procedurally barred and the other claims were

---

[21] St. Rec. Vol. 2 of 7, Application for Post-Conviction Relief Requests for Specific Supporting Documentation, Requests 30 Days to Supplement Original Application and for Evidentiary Hearing to Resolve Disputed Facts, 9/27/17 (9/22/17).

[22] *Id.*

[23] *Id.*

[24] St. Rec. Vol. 2 of 7, Trial Court Order, 10/11/17.

[25] *Id.*

meritless.[26]  On March 28, 2018, the Trial Court found that claims one through nine were meritless and claim ten was not cognizable for review.[27]

On July 27, 2018, the Louisiana Fifth Circuit denied Butler's writ application finding Butler had not established a particularized need for any of the requested documents to be provided free of charge and no error in the Trial Court's denial of Butler's application for post-conviction relief.[28]  On May 20, 2019, the Louisiana Supreme Court denied Butler's related writ application finding he had failed to show he received ineffective assistance of counsel under the standard of *Strickland v. Washington*, 466 U.S. 668 (1984).[29]

## II.    Federal Habeas Petition

On August 13, 2019, after correction of certain deficiencies, the clerk of this Court filed Butler's petition for federal habeas corpus relief in which he asserts the following grounds for relief:[30] (1) ineffective assistance of counsel for failing to (a) object during voir dire, (b) object during the prosecution's opening statement, (c) object during the prosecution's closing argument, (d) object when the prosecution elicited false testimony from Thomas, (e) impeach Thomas with his criminal history, (f) object when the prosecution vouched for the credibility of Goff, (g) investigate and subpoena Goff's personnel records, (h) suppress the audio of Butler's telephone

---

[26]St. Rec. Vol. 2 of 7, State's Response to Post Conviction Relief, 2/5/18.

[27]St. Rec. Vol. 3 of 7, Trial Court Order, 3/28/18.

[28]St. Rec. Vol. 3 of 7, 5th Cir. Order, 18-KH-346, 7/27/18; St. Rec. Vol. 7 of 7, 5th Cir. Writ Application, 18-KH-346, 6/18/18.

[29]*Butler v. Vannoy*, 271 So.3d 1261 (La. 2019); St. Rec. Vol. 7 of 7, La. S. Ct. Order, 18-KH-1449, 5/20/19; La. S.Ct. Writ Application, 18 KH 1449, 8/29/18 (e-filed 8/23/18.

[30]Rec. Doc. No. 4.

conversations, (i) suppress Goff's twenty minute pre-interview Butler, and (j) move to reconsider the consecutive sentences and object to the consecutive nature of the sentences; (2) the Trial Court erred in failing to sever the offenses; (3) the Trial Court erred in admitting "other crimes" evidence; AND (4) the Trial Court erred in imposing an excessive sentence.

The State filed a response in opposition to the petition asserting that Butler timely filed his federal petition and his claims are exhausted.[31]  The State asserts that Butler's claim of ineffective assistance of counsel for failing to move to reconsider the sentence and his substantive claim regarding the excessive sentences are procedurally barred, and the remaining claims can be dismissed as meritless or not cognizable on federal habeas review.

## III.    General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[32] applies to this petition, which is deemed filed in this Court under the federal mailbox rule on August 2, 2019.[33]  The threshold questions on habeas review under the amended

---

[31]Rec. Doc. No. 16.

[32]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996.  *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments.  Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.  *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[33]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se.  Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995).  The clerk of this Court docketed Butler's petition on August 2, 2019, and the case later was opened August 13, 2019 when Butler filed a motion to proceed in forma pauperis.  After his motion was denied, he paid the filing fee.  Butler signed his petition on July 30, 2019.  Rec. Doc. No. 3, p. 5.  He has declared this to be the date on which he delivered the pleadings to prison officials for mailing.  His petition includes a e-file stamp dated August 2, 2019.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition.  *See Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and the claims must not be in "procedural default." *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State concedes Butler timely filed his federal petition and exhausted his claims. The State contends that two claims are in procedural default and that Butler's remaining claims can be dismissed as meritless or not cognizable on federal habeas review.[34]

## IV.    **Procedural Default (Claim Nos. 1 (in part) and 4)**

The State claims that two issues raised by Butler are in procedural default, having been dismissed by the Louisiana Supreme Court as procedurally barred from review. These claims are ineffective assistance of counsel for failing to object or move to reconsider the sentences imposed and the Trial Court imposed an overall excessive sentence.

Butler raised on direct appeal his claim that the Trial Court's imposition of consecutive sentences was excessive. The Louisiana Fifth Circuit found that Butler was not entitled to review of the consecutive nature of his sentence due to the failure to raise the issue before the Trial Court or file a motion for reconsideration citing *State v. Hunter*, 59 So.3d 1270, 1272 (La. App. 5th Cir. 2011), and *State v. Escobar–Rivera*, 90 So.3d 1, 8 (La. App. 5th Cir. 2012), *writ denied*, 90 So.3d 411 (La. 2012). The Louisiana Supreme Court denied relief without stated reasons. *See Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will

---

[34]Rec. Doc. No. 13.

presume that the state court has relied upon the same grounds as the last reasoned state court opinion).

Butler raised in his application for post-conviction relief his claims that trial counsel was ineffective in failing to object to or file a motion to reconsider the sentences. The Trial Court found that the claim was procedurally barred as non-cognizable citing Louisiana Code of Criminal Procedure article 930.3 and *State ex rel. Melinie v. State*, 665 So. 2d 1172 (La. 1996). The Louisiana Fifth Circuit agreed with the Trial Court that Butler's ineffective assistance of counsel claim related to his sentencing was procedurally barred. The Louisiana Supreme Court, however, did <u>not</u> find the claim procedurally barred; rather, it found Butler failed to show he received ineffective assistance of counsel under the *Strickland* standard. Thus, Butler's claim of ineffective assistance of counsel for failing to object or file a motion to reconsider sentence is <u>not</u> procedurally barred.

The Court must consider whether the bar to review relied upon by the Louisiana Supreme Court prohibits consideration of Butler's substantive claim that the Trial Court erred in imposing consecutive sentences resulting in an excessive overall sentence. As discussed above, for a state-imposed procedural bar to prevent review by this federal habeas court, the bar must be both independent and adequate.

A.    <u>Independent and Adequate State Ground</u>

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state law ground that is both independent of the merits of the federal claim and adequate to support that judgment. *Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991); *Glover v. Cain*, 128 F.3d 900, 902 (5th Cir. 1997); *Amos v. Scott*, 61 F.3d 333, 338

& n.15 (5th Cir. 1995) (citing *Harris v. Reed*, 489 U.S. 255, 260, 262 (1989)). The "independent and adequate state ground" doctrine applies to both substantive and procedural grounds and affects federal review of claims that are raised on either direct or post-conviction review. *Coleman*, 501 U.S. at 731-32; *Amos*, 61 F.3d at 338. This type of procedural default will bar federal court review of a federal claim raised in a habeas petition when the last state court to render a judgment in the case has clearly and expressly indicated that its judgment is independent of federal law and rests on a state procedural bar. *Harris*, 489 U.S. at 263; *Glover*, 128 F.3d at 902. Federal review is barred even if the state court alternatively address the merits. *See Busby v. Dretke*, 359 F.3d 708, 718 (5th Cir. 2004) (citing *Harris*, 489 U.S. at 264 n.10).

A dismissal is independent of federal law when the last state court "clearly and expressly" indicated that its judgment rests on a state procedural grounds that bars review of the claim. *Amos*, 61 F.3d at 338. The state-law ground may be a substantive rule dispositive of the case or a procedural bar to adjudication of the claim on the merits. *See Wainwright v. Sykes*, 433 U.S. 72, 81-82, 90 (1977). The question of the adequacy of a state procedural bar is itself a federal question. *Beard v. Kindler*, 558 U.S. 53, 60 (2009) (citing *Lee v. Kemna*, 534 U.S. 362, 375 (2002)). To be adequate, the state procedural rule must be strictly or regularly followed and evenhandedly applied to the majority of similar cases. *Walker v. Martin*, 562 U.S. 307, 315-17 (2011); *Glover*, 128 F.3d at 902. A state procedural rule, however, "can be 'firmly established' and 'regularly followed'— even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Beard*, 558 U.S. at 60 (citations omitted).

In evaluating the adequacy of the rules applied to bar a petitioner's claim, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law.

*Narvaiz v. Johnson*, 134 F.3d 688, 695 (5th Cir. 1998) (citing *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991)); *accord Turner v. Johnson*, 46 F. Supp. 2d 655, 674 (S.D. Tex. 1999). Rather, a federal court's analysis focuses on due process considerations, and due process requires only that the Court grant the writ when the errors of the state court make the underlying proceeding fundamentally unfair. *See Neyland v. Blackburn*, 785 F.2d 1283, 1293 (5th Cir. 1986) (citing *McAfee v. Procunier*, 761 F.2d 1124, 1126 (5th Cir. 1985) and *Lane v. Jones*, 626 F.2d 1296 (5th Cir. 1980)). In keeping with this, a state procedural rule that is applied arbitrarily or in an unexpected manner may be considered inadequate to prevent federal review. *Martin v. Maxey*, 98 F.3d 844, 847 (5th Cir. 1996); *Prihoda v. McCaughtry*, 910 F.2d 1379, 1383 (7th Cir. 1990).

> A federal court may not second-guess a state court's rule of procedure, but must evaluate whether the rule was actually applicable on the particular facts of the case. Otherwise, state courts could disregard federal rights with impunity simply by using the word "waived."

*United States ex rel Bradley v. Clark*, No. 99-C-1785, 2002 WL 31133094, at *4 n.2 (N.D. Ill. July 18, 2002).

For this reason, when state courts apply a procedural bar that has no foundation in the record or basis in state law, the federal courts need not honor that bar. *Davis v. Johnson*, No. 00CV684–Y, 2001 WL 611164, at *4 n.10 (N.D. Tex. May 30, 2001); *see also Johnson v. Lensing*, No. 99–0005, 1999 WL 562728, at *4 (E.D. La. July 28, 1999) (Berrigan, J.) (finding La. Code Crim. P. art. 930.8 bar was not adequate because it was not properly applied under the circumstances of the case); *Poree v. Cain*, No. 97–1546, 1999 WL 518843, at *4 (E.D. La. July 20, 1999) (Mentz, J.) (finding art. 930.8 was not adequate to bar review because it was misapplied). It is not, however, within the federal court's province to disagree with the application of the bar; it is only to determine its adequacy. *Lee v. Cain*, No. 03–2626, 2004 WL 2984274, at *1 n.2 (E.D. La. Dec. 6, 2004) (Vance, J.) (addressing La. Code Crim. P. art. 930.3 as applied to ineffective

assistance of counsel claim).  Thus, where such foundation and basis does exist, as it does in the case of this issue, the bar must stand.

In this case, the Louisiana Fifth Circuit relied on *State v. Hunter* and *State v. Escobar-Rivera* to find that Butler had not properly preserved for appeal the issue of the Trial Court's imposition of consecutive sentences.  In *Hunter*, the Louisiana Fifth Circuit found that defense counsel's failure to comply with Louisiana Code of Criminal Procure article 881.1 limited the review of the defendant's sentence for constitutional excessiveness. 59 So. 3d at 1272-73 Louisiana Code of Criminal Procure article 881.1(E) provides in relevant part that "[f]ailure to make or file a motion to reconsider sentence or to include a specific ground upon which a motion to reconsider sentence may be based, including a claim of excessiveness, shall preclude the state or the defendant from raising an objection to the sentence or from urging any ground not raised in the motion on appeal or review."

The federal courts have consistently found this state procedural bar to be evenhandedly applied and adequate to bar federal review.  *Odis v. Vannoy*, Civ. Action No. 2019 WL 6716956 (E.D. La. Dec. 10, 2019) (order adopting Report and Recommendation); *Young v. Travis*, Civ. Action No. 07-3542, 2011 WL 494811, at *7 (E.D. La. Jan. 13, 2011), *adopted,* 2011 WL 494802, at *1 (E.D. La. Feb. 4, 2011); *Semien v. Warden*, Civ. Action No. 08–0162, 2009 WL 1393316, at *6–7 (W.D. La. May 12, 2009) (order adopting Report and Recommendation); *Weaver v. Cain*, Civ. Action No. 04–1642, 2006 WL 2792427, at *12 (E.D. La. Sept. 25, 2006) (order adopting Report and Recommendation); *Fontan v. Ieyoub*, Civ. Action No. 94–1416, 1994 WL 374296, at *5-6 (E.D. La. July 5, 1994).

The state courts' rulings were based on Louisiana law setting forth the procedural requirements for the preservation and presentation of post-conviction claims. *See Fisher*, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue). The state courts' reasons for dismissal of Butler's excessive sentence claim was, therefore, independent of federal law and adequate to bar review of his claim in this federal habeas court.

For the foregoing reasons, the procedural bar imposed on Butler's argument regarding the Trial Court's imposition of consecutive sentences resulting in an overall excessive sentence (claim four) is supported by the record and is adequate to foreclose review by this federal court. Because the Louisiana Supreme Court's decision rested on an independent and adequate state rule of procedural default, this Court will not review this claim unless Butler has established one of the following exceptions.

### B.    <u>Cause and Prejudice</u>

A federal habeas petitioner may be excluded from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice." *Glover*, 128 F.3d at 902 (citing *Coleman*, 501 U.S. at 731–32); *Amos*, 61 F.3d at 338–39 (citing *Harris*, 489 U.S. at 262); *see Engle v. Isaac*, 456 U.S. 107, 128 & n.33 (1982).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. *Murray v. Carrier*, 477 U.S. 478, 488 (1986). The mere fact that a petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. *Id.* at 486. As will be discussed later in this report, to the extent petitioner claims that his counsel was ineffective in failing to object

to or file a motion to reconsider the consecutive nature of the sentences, he has not established his claim under either prong of *Strickland*, and his claim does not stand as cause to overcome this procedural bar.  Petitioner has not asserted, and this Court's review of the record does not support a finding, that any factor external to the defense prevented Butler from raising the claim in a procedurally proper manner.  The record also does not reflect any action or inaction on the part of the State which prevented him from doing so.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown."  *Hogue v. Johnson*, 131 F.3d 466, 497 (5th Cir. 1997) (citing *Engle*, 456 U.S. at 134 n.43).  Petitioner's defaulted claim is, therefore, procedurally barred from review by this federal habeas corpus court.  *See Trest v. Whitley*, 94 F.3d 1005, 1008 (5th Cir. 1996) (habeas review precluded where petitioner neglected to allege actual prejudice and cause of failure to comply with state procedural rule concerning time restriction on filing for state post-conviction relief), *vacated on other grounds*, 522 U.S. 87 (1998).[35]

Having failed to show an objective cause for his default, the Court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice.  *Ratcliff v. Estelle*, 597 F.2d 474, 477 (5th Cir. 1979) (citing *Lumpkin v. Ricketts*, 551 F.2d 680, 681–82 (5th Cir. 1977)).

### C.    Fundamental Miscarriage of Justice

Butler may avoid this procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed.  *Hogue*, 131 F.3d 497 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, Butler must provide this

---

[35]The Supreme Court vacated the Fifth Circuit's opinion on grounds that a court of appeals is not required to raise the procedural default argument *sua sponte* but may do so in its discretion.  *Id.*

court with evidence that would support a "colorable showing of factual innocence." *Kuhlmann v. Wilson*, 477 U.S. 436, 454 (1986); *accord Murray,* 477 U.S. at 496; *Glover*, 128 F.3d at 902. To satisfy the factual innocence standard, Petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt. *Campos v. Johnson*, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); *see Nobles*, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense."). "It is important to note in this regard that 'actual innocence' means factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998) (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)). When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception. *Glover*, 128 F.3d at 903.

Butler does not present any claim, and the record contains nothing, to suggest or establish his actual innocence. His claims instead address alleged procedural and evidentiary errors and not his actual innocence. He fails to present any evidence or argument of the kind of actual innocence that would excuse the procedural default. He, therefore, has failed to overcome the procedural bar to his claim, and his fourth claim, alleging that the Trial Court erred in sentencing him to consecutive sentences, should be dismissed with prejudice.

## V.    __Standards for a Merits Review__

The AEDPA standard of review is governed by § 2254(d) and the Supreme Court's decision in *Williams v. Taylor*, 529 U.S. 362 (2000). It provides different standards for questions of fact, questions of law, and mixed questions of fact and law.

A state court's determinations of questions of fact are presumed correct and the Court must give deference to the state court findings unless they were based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d)(2) (2006); *see Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption. 28 U.S.C. § 2254(e)(1) (2006).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under § 2254(d)(1), as amended by the AEDPA. The standard provides that deference be given to the state court's decision unless the decision is "contrary to or involves an unreasonable application of clearly established federal law" as determined by the United States Supreme Court. *Hill*, 210 F.3d at 485. The "critical point" in determining the Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White v. Woodall*, __ U.S. __, 134 S. Ct. 1697, 1706-07 (2014) (citing *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). "Thus, 'if a habeas court must extend a rationale before it can apply to the facts at hand,' then by definition the rationale was not 'clearly established at the time of the state-court decision.'" *White*, 134 S. Ct. at 1706 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 666 (2004)).

A state court's decision can be "contrary to" federal law if: (1) the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law; or (2) the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable

facts. *Williams*, 529 U.S. at 405-06, 412-13; *Penry v. Johnson*, 532 U.S. 782, 792-93 (2001); *Hill*, 210 F.3d at 485. A state court's decision can involve an "unreasonable application" of federal law if it correctly identifies the governing rule but then applies it unreasonably to the facts. *White*, 134 S. Ct. at 1706-07; *Williams*, 529 U.S. at 406-08, 413; *Penry*, 532 U.S. at 792.

The Supreme Court in *Williams* did not specifically define "unreasonable" in the context of decisions involving unreasonable applications of federal law. *See Williams*, 529 U.S. at 410. The Court, however, noted that an unreasonable application of federal law is different from an incorrect application of federal law. *Id.* "'[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [a Supreme Court case] incorrectly.'" *Price v. Vincent*, 538 U.S. 634, 641 (2003) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24-25 (2002)) (brackets in original); *Bell v. Cone*, 535 U.S. 685, 699 (2002)).

Thus, under the "unreasonable application" determination, the Court need not determine whether the state court's reasoning is sound, rather "the only question for a federal habeas court is whether the state court's determination is objectively unreasonable." *Neal v. Puckett*, 286 F.3d 230, 246 (5th Cir. 2002). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. *Price*, 538 U.S. at 641 (quoting *Woodford*, 537 U.S. at 24-25); *Wright v. Quarterman*, 470 F.3d 581, 585 (5th Cir. 2006). In addition, review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## VI.    <u>Appointment of Counsel</u>

Butler claims that he is entitled to relief and substantive review of all his claims because the state courts did not provide him with assistance of counsel to develop his claims further. He relies on the United States Supreme Court's decision in *Martinez v. Ryan*, 566 U.S. 1 (2012), to support his argument. The State responds that Butler's reliance on *Martinez* is misplaced and that it has no applicability to this case.

The State is correct that *Martinez* does not require state courts to appoint counsel to provide further development of a petitioner's post-conviction claims. *Martinez* rather reiterated the long-standing holding in *Coleman v. Thompson*, 501 U.S. 722, 752 (1991), that petitioners have no constitutional right to counsel on post-conviction review and that deficient performance by post-conviction counsel does not excuse procedural default. *Martinez* only created a narrow exception to that general rule that a state imposed procedural bar to review "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino v. Thaler*, 569 U.S. 413, 417 (2013) (quoting *Martinez*, 566 U.S. at 17). The record reflects no state court imposed procedural bar to review of Butler's claims of ineffective assistance of counsel. No part of the *Martinez* holding applies to Butler's case or required that he be provided with post-conviction assistance of counsel in the state courts or this federal court to develop his claims further. He is not entitled to relief of this kind.

## VII.    <u>Denial of Records Request</u>

Butler claims that the state courts' denial of his request for free copies of the trial court record, including transcripts of voir dire, opening statements and closing arguments, jury

instructions, the complete trial transcript, suppression hearing transcripts and any other hearing transcripts, the grand jury testimony of Thomas and Goff, the District Attorney's file, and Goff's personnel and disciplinary files violated state law.

Butler did not enumerate this allegation as a separate claim and the State did not address it as such. Nonetheless, the State, in addressing some of Butler's ineffective assistance of counsel claims, argues that Butler was not denied access to the documents; rather, the Louisiana state courts found that Butler had not shown a particularized need for the documents to be provided free of charge.[36]

Butler does not present a cognizable issue for federal habeas review based on his perceived rights under state law. It is well settled that "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67–68; *see also Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (federal habeas review does not lie for errors of state law). A federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." *Wilkerson v. Whitley*, 16 F.3d 64, 67 (5th Cir. 1994) (citation and quotation omitted).

Under federal law, on direct appeal, an indigent criminal has an absolute right to a trial transcript, or an alternative device that fulfills the same function. *Griffin v. Illinois*, 351 U.S. 12, 18-20 (1956). There is no question that the trial transcript, with the exception of voir dire, opening statements and closing arguments, and the suppression hearing transcripts were in fact provided to petitioner's appellate counsel, which Butler does not deny. There is, however, no general due-

---

[36]Rec. Doc. 13, pp. 13-15.

process right of access to state-court records on collateral review in criminal proceedings.  *See*, *e.g.*, *United States v. MacCollom*, 426 U.S. 317, 323-24 (1976) (no constitutional right to transcripts on collateral review of a conviction; a federal petitioner on collateral review must demonstrate that his claims are not frivolous and that transcripts are needed to prove his claims before he is entitled to a free copy of pertinent transcripts); *Deem v. Devasto*, 140 F. App'x 574, 575 (5th Cir. 2005); *Cook v. Cain*, Civ. Action No. 15-1882, 2015 WL 6702290, at *2 (E.D. La. Nov. 3, 2015).

It is well-established that a habeas petitioner is not entitled to records free of charge for the purpose of conducting a "fishing expedition", hoping to uncover evidence to support his application for habeas relief.  *See generally Jackson v. Estelle*, 672 F.2d 505, 506 (5th Cir. 1982). On collateral review, the burden is on the petitioner to positively demonstrate that there is a particularized need for the requested documents and transcripts and that the request is not frivolous. *MacCollom*, 426 U.S. at 326; *Smith v. Beto*, 472 F.2d 164, 165 (5th Cir. 1973) (affirming the lower court's finding that there was no constitutional violation where the petitioner's attorney had access to the state court record and trial transcripts on direct appeal and where "the petitioner did not need a transcript in order to establish his contention that he was denied effective counsel at his state trial").  In the absence of a showing of a "particularized need" for such discovery, petitioner is not entitled to habeas corpus relief, especially in the context of a request for grand jury testimony. *See Robinson v. Cain*, Civ. Action No. 05–5478, 2011 WL 890973 at *8 (E.D. La. Feb. 7, 2011) (Chasez, M.J.), *adopted*, 2011 WL 901193 (E.D. La. Mar. 14, 2011) (Zainey, J.)(citing *Pittsburgh Plate Glass Co. v. United States*, 360 U.S. 395, 399–401 (1959)(because

defendant failed to meet burden of showing "particularized need", trial court did not err in refusing to disclose grand jury testimony)).

Butler provides no specifics regarding what evidence the grand jury transcript and the District Attorney's file would have produced. While he claims that Goff had a disciplinary record, he similarly provides no specifics as to her offense(s) or that her record would have been relevant. Finally, while Butler claims that the prosecutor made objectionable statements during voir dire, opening statement, and closing argument, he provides absolutely no evidence supporting his claims. Instead, it appears that Butler simply believes the Trial Court should have had those portions of the trial transcribed and provided him with free copies of the transcripts, the District Attorney record, and Goff's personnel file to allow him to perform a fishing expedition in the hope that exculpatory or impeachment evidence would be uncovered.

Based on the unsubstantiated nature of Butler's ineffective assistance of counsel claims, addressed below, all of which are meritless, vague, or conclusory, Butler has not met his burden of showing particularized need for the records or transcripts. He is not entitled to relief as to this claim.

## VIII.   Effective Assistance of Counsel (Claim No. 1)

Butler alleges that he received ineffective assistance of counsel. He claims his trial counsel should have objected during voir dire when the prosecution told perspective jurors that Butler was very uncooperative during the initial interview with Detective Goff. He further claims his counsel should have objected during the prosecution's opening statement when the prosecution told the jurors that Butler asked his brother to give him an alibi because he did not have one. He also faults his counsel's failure to object to the prosecution's closing argument when the prosecutor referred

to Butler as a violent street-thug who needed to be removed from free-society. He also claims his counsel failed to object when the prosecution elicited false testimony from Thomas regarding Butler's identity and involvement in the murder of Dearmas and failed to impeach Thomas with his criminal history. Butler asserts that his counsel should have objected when the prosecution stated that Goff had no disciplinary infractions. He claims that, had counsel investigated and subpoenaed Goff's personnel records, defense counsel would have discovered Goff had a history of misconduct. Butler also faults his counsel for failing to suppress the audio of Butler's telephone conversations and Goff's twenty-minute pre-interview of Butler. Finally, he asserts his counsel was ineffective for failing to object to and move to reconsider the consecutive nature of the sentences.

In response, the State argues that Butler's ineffective assistance of counsel claims are conclusory, speculative, and without merit. The States asserts that Butler failed to provide any evidence or legal analysis supporting his claims that the prosecutor made objectionable comments during voir dire, opening statement, and closing argument or that his trial counsel failed to object to the alleged comments. The States asserts that Butler failed to specify the alleged false testimony by Thomas and further failed to provide any evidence that any of Thomas's testimony was actually false.

With regard to his claim that his counsel failed to impeach Thomas with his criminal history, the State responds that Butler provided no evidence of Thomas's alleged criminal history nor has he demonstrated that any such alleged evidence would have been admissible. In addressing, Butler's claims that his counsel failed to object to the prosecution's statement that Goff had no disciplinary infractions and also failed to subpoena Goff's personnel records, the State

responds that there is no evidence of record that the prosecution made such a statement or that Goff had any sort of record of misconduct. It further asserts that Butler failed to show how any alleged record of misconduct would have been admissible at trial.

As for counsel's failure to move to have the jail calls suppressed, the State notes that counsel extensively, albeit unsuccessfully, challenged the admissibility of the jail calls. The States asserts that there was no evidence that Goff conducted a pre-interview with Butler or that his statement was illegally obtained. The State concludes, given the speculative and conclusory nature of the foregoing claims, Butler fails to show deficient performance or resulting prejudice. The State did not address the merits of Butler's claim of ineffective assistance of counsel for failing to object or move to reconsider the consecutive nature of his sentences.

Butler raised his arguments in his state application for post-conviction relief. Relying on *Strickland*, 466 U.S. at 668, and related state case law, the Trial Court found that Butler's claims of ineffective assistance of counsel relating to voir dire, opening statement, and closing argument were unsubstantiated, speculative, and conclusory.[37] It similarly found that claims relating to counsel's failure to object to Thomas's alleged false testimony and impeach Thomas and Goff, subpoena Goff's personnel records, and suppress a pre-interview were meritless.[38] The Trial Court found no merit to Butler's claim of ineffective assistance of counsel for failing to suppress the jailhouse telephone conversations as unlawfully intercepted.[39] Finally, the Trial Court found Butler's claim of ineffective assistance of counsel related to his sentence procedurally barred.[40]

---

[37]St. Rec. Vol. 3 of 7, Trial Court Order, pp. 2-3, 3/28/18.

[38]*Id*.

[39]*Id*., at p. 3.

The Louisiana Fifth Circuit found Butler failed to provide both deficient performance and prejudice as to all of his claims with the exception of his claim of ineffective assistance of counsel for failing to object to or move to reconsider his sentences, which it found to be procedurally barred.[41]  In the last reasoned opinion, the Louisiana Supreme Court concluded that Butler failed to demonstrate that he received ineffective assistance of counsel under the *Strickland* standards.[42]

### A.  <u>Standards of Review under *Strickland*</u>

The issue of ineffective assistance of counsel is a mixed question of law and fact.  *Clark v. Thaler*, 673 F.3d 410, 416 (5th Cir. 2012); *Woodfox v. Cain*, 609 F.3d 774, 789 (5th Cir. 2010). The question for this Court is whether the state courts' denial of relief was contrary to, or an unreasonable application of, federal law as determined by the Supreme Court.

In *Strickland*, the Court established a two-part test for evaluating claims of ineffective assistance of counsel in which the petitioner must prove deficient performance and prejudice therefrom. 466 U.S. at 687. The petitioner has the burden of proving ineffective assistance of counsel by a preponderance of the evidence.  *Montoya v. Johnson*, 226 F.3d 399, 408 (5th Cir. 2000); *Jernigan v. Collins*, 980 F.2d 292, 296 (1992).  In deciding ineffective assistance claims, a court need not address both prongs of the conjunctive *Strickland* standard, but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *Amos*, 61 F.3d at 348.

To prevail on the deficiency prong, a petitioner must demonstrate that counsel's conduct failed to meet the constitutional minimum guaranteed by the Sixth Amendment.  *See Styron v.*

---

[40]*Id*., at pp. 3-4.

[41]St. Rec. Vol. 3 of 7, 5th Cir. Order, 18-KH-346, p. 3-4, 7/27/18.

[42]*Butler*, 271 So. 3d at 1261; St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2018-KH-1449, 5/20/19.

*Johnson*, 262 F.3d 438, 450 (5th Cir. 2001). "The defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88. The analysis of counsel's performance must take into account the reasonableness of counsel's actions under prevailing professional norms and in light of all of the circumstances. *See Strickland*, 466 U.S. at 689; *Carty v. Thaler*, 583 F.3d 244, 258 (5th Cir. 2009). The reviewing court must "judge . . . counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) (quoting *Strickland*, 466 U.S. at 690). Petitioner must overcome a strong presumption that the conduct of his counsel falls within a wide range of reasonable representation. *Harrington*, 562 U.S. at 104 (citing *Strickland*, 466 U.S. at 689). "[I]t is all too easy to conclude that a particular act or omission of counsel was unreasonable in the harsh light of hindsight." *Bell*, 535 U.S. at 702 (citing *Strickland*, 466 U.S. at 689). As a result, federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise. *Strickland*, 466 U.S. at 689; *Johnson v. Dretke*, 394 F.3d 332, 337 (5th Cir. 2004) (counsel's "'conscious and informed decision on trial tactics and strategy cannot be the basis for constitutionally ineffective assistance of counsel unless it is so ill chosen that it permeates the entire trial with obvious unfairness.'") (quoting *United States v. Jones*, 287 F.3d 325, 331 (5th Cir. 2002)); *Geiger v. Cain*, 540 F.3d 303, 309 (5th Cir. 2008).

In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694; *Williams v. Thaler*, 602 F.3d 291, 310 (5th Cir. 2010). Furthermore, "[t]he petitioner must 'affirmatively prove,' and not just allege, prejudice." *Day v. Quarterman*, 566 F.3d 527, 536 (5th Cir. 2009) (quoting *Strickland*, 466 U.S. at 695). In this context, "a reasonable probability is a probability sufficient to undermine confidence in the

outcome." *Cullen*, 563 U.S. at 189 (quoting *Strickland*, 466 U.S. at. 694). This standard requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington*, 562 U.S. at 112. In making a determination as to whether prejudice occurred, courts must review the record to determine "the relative role that the alleged trial errors played in the total context of [the] trial." *Crockett v. McCotter*, 796 F.2d 787, 793 (5th Cir. 1986). Thus, conclusory allegations of ineffective assistance of counsel, with no showing of effect on the proceedings, do not raise a constitutional issue sufficient to support federal habeas relief. *Miller*, 200 F.3d at 282 (citing *Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983)).

On habeas review, the United States Supreme Court has clarified that, in applying *Strickland*, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." *Harrington*, 562 U.S. at 105 (citing *Strickland*, 466 U.S. at 690). The *Harrington* Court went on to recognize the high level of deference owed to a state court's findings under *Strickland* in light of AEDPA standards of review:

> The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

*Id*. at 105 (citations and quotation marks omitted).

Thus, scrutiny of counsel's performance under § 2254(d) therefore is "doubly deferential." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 112 (2009)). This Court must therefore apply the "strong presumption" that counsel's strategy and defense tactics fall "within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 690; *Moore*

*v. Johnson*, 194 F.3d 586, 591 (5th Cir. 1999).

Federal habeas courts presume that trial strategy is objectively reasonable unless clearly proven otherwise by the petitioner. *Strickland*, 466 U.S. at 689; *Geiger*, 540 F.3d at 309; *Moore*, 194 F.3d at 591.  In assessing counsel's performance, a federal habeas court must make every effort to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time of trial. *Strickland*, 466 U.S. at 689; *Neal*, 286 F.3d at 236–37; *Clark v. Johnson*, 227 F.3d 273, 282–83 (5th Cir. 2000).   Tactical decisions when supported by the circumstances are objectively reasonable and do not amount to unconstitutionally deficient performance.  *Lamb v. Johnson*, 179 F.3d 352, 358 (5th Cir. 1999) (citing *Rector v. Johnson*, 120 F.3d 551, 564 (5th Cir. 1997) and *Mann v. Scott*, 41 F.3d 968, 983–84 (5th Cir. 1994)).

### B.  Failure to Object to Voir Dire, Opening Statement and Closing Argument

Butler claims that his counsel was ineffective in failing to object to the prosecution allegedly stating in voir dire that Butler was initially uncooperative during his initial interview with Goff.  He further faulted his counsel for failing to object when the prosecutor allegedly told the jury during opening statement that Butler asked his brother to give him an alibi because he did not have one.  He additionally claims that his counsel failed to object when the prosecutor allegedly stated during closing arguments that Butler was a violent street thug and needed to be removed from free society.

The State asserts Butler's claims are speculative and conclusory.  It argues that Butler provides no evidence or legal analysis supporting his claims.  It further argues that Butler has not shown a reasonable likelihood that an objection would have resulted in a different outcome of the trial.

Butler offers no evidence whatsoever of his self-serving allegations that the prosecutor made such statements.  It does not appear that voir dire, opening statements, or closing arguments were transcribed, and, as previously addressed, the state courts found that Butler had not shown a particularized need for the transcripts to be provided free of charge.  Butler apparently did not obtain the transcripts as they are not part of the record.  However, the trial transcript of record, which is part of the state record, does not reflect that the prosecutor made any such statements at any other point during the trial.  Butler does not provide an affidavit from anyone present at the trial who could substantiate his claims that the prosecutor made the alleged statements.

The evidence of record demonstrates that Butler voluntarily turned himself in to the Jefferson Parish Sheriff's Office and made only one statement, during which he answered the questions asked of him.[43]  The transcript does not show him to be uncooperative.[44]  There is no evidence of any other interview or statement by Butler.

Even assuming the prosecution told the jury in opening statement that Butler asked his brother Preston Butler to give him an alibi, Butler has not shown deficient performance or prejudice as a result of his counsel's failure to object.  La. Code Crim. P. art. 766 provides that "[t]he opening statement of the state shall explain the nature of the charge, and set forth, in general terms, the nature of the evidence by which the state expects to prove the charge."  The jury heard evidence that Preston Butler, who accompanied Cornell Butler when he turned himself in, was interviewed by Detective Fernandez.  Detective Rhonda Goff testified on direct exam about

---

[43]St. Rec. Vol. 2 of 7, Jefferson Parish Sheriff's Office Transcribed Audio Tape Statement Form, 4/19/12; St. Rec. Vol. 4 of 7, Hearing Transcript, pp. 15, 30-32, 7/25/13; St. Rec. Vol. 5 of 7, Trial Transcript, p. 51, 2/20/14.

[44]St. Rec. Vol. 2 of 7, Jefferson Parish Sheriff's Office Transcribed Audio Tape Statement Form, 4/19/12.

Butler's recorded statement, which included his alibi.[45]  Butler told her he was somewhere else with his brother Preston a/k/a "Tootsie."[46]  She testified that Officer Fernandez took the statement from Preston Butler and there were inconsistencies between his story and Butler's statement.[47]  She testified that she did not do any more investigation of an alibi because "Tootsie backed off from his original statement and did not provide an alibi."[48]  Fernandez did not testify at trial.

Further, assuming the prosecution made any of the statements claimed by Butler, the jury was instructed at least twice that opening statements and closing arguments are not to be considered evidence and that they were "not to be influenced by sympathy, passion, prejudice, or public opinion"[49], and there is no reason to believe that they disregarded that instruction.  *Weeks v. Angelone*, 528 U.S. 225, 234 (2000) ("A jury is presumed to follow its instructions.")  Finally, given the evidence, which included eyewitness testimony, Butler has not shown a reasonable likelihood that the outcome of the trial would have been different had his counsel objected to the alleged statements.

The state courts' denial of relief of these claims was not contrary to, or an unreasonable application of federal law.  Thus, Butler is not entitled to relief on these claims.

---

[45]St. Rec. Vol. 5, Trial Transcript, p. 53, 2/20/14.

[46]*Id*., at p. 53.

[47]*Id*., at p. 56.
[48]*Id*., at 57.

[49]St. Rec. Vol. 5 of 7, Trial Transcript, pp. 68-69, 2/19/14; St. Rec. Vol. 6 of 7, Trial Transcript, p. 10, 2/21/14.

### C. __Failure to Object to the False Testimony of Thomas__

Butler claims that his counsel was ineffective for failing to object when the prosecution elicited false testimony from Thomas regarding Butler's identity and his involvement in the murder. The State responds that this claim is conclusory, speculative, and unsupported by any evidence. It correctly asserts that Butler does not identify which portions of Thomas's testimony he alleges to be false, and, further, fails to demonstrate that any of his testimony was in fact false.

A state denies a defendant due process when it knowingly uses perjured testimony at trial or allows untrue testimony to go uncorrected. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996). The petitioner must show that: (1) the testimony was actually false, (2) the State knew the testimony was false, and (3) the testimony was material. *Duncan v. Cockrell*, 70 F. App'x 741, 744-45 (5th Cir. July 3, 2003); *Kirkpatrick v. Whitley*, 992 F.2d 491, 497 (5th Cir. 1993). False testimony is "material" only if there is any reasonable likelihood that it could have affected the jury's verdict. *Duncan*, 70 F. App'x at 744 (citing *Nobles*, 127 F.3d at 415).

Here, it is clear that Butler has not met his burden of proving that any of Thomas's testimony was actually false and that the prosecution knew it to be false and allowed it to go uncorrected. Perjury is the offering of "false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake, or faulty memory." *United States v. Dunnigan*, 507 U.S. 87, 94 (1993). Even if Thomas's testimony was inconsistent with other testimony and evidence, that does not establish that it was false or that the prosecution knew or believed that testimony to be false. *See Kutzner v. Cockrell*, 303 F.3d 333, 337 (5th Cir. 2002); *Koch v. Puckett*, 907 F.2d 524, 531 (5th Cir. 1990) (holding that conflicting

testimony does not prove perjury but instead establishes a credibility question for the jury). The mere existence of a conflict in testimony and evidence does not make it false or perjured. *See United States v. Wall*, 389 F.3d 457, 473 (5th Cir. 2004), *cert. denied*, 544 U.S. 978 (2005) ("Wall has not established that McDowell's testimony was actually false. He has merely shown that Ristau's testimony would establish a conflict in the testimony, a far cry from showing that it was 'actually false.'").

The evidence in this case presents nothing more than the kind of credibility conflict and dispute over the appropriate weight to be afforded to it that frequently occurs at trial and which is the jury's function to resolve. Defense counsel's failure to object to Thomas's testimony was not ineffective. *See Johnson v. Cockrell*, 306 F.3d 249, 255 (5th Cir. 2002) (counsel is not required to make futile motions or frivolous objections); *Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also Wood v. Quarterman*, 503 F.3d 408, 413 (5th Cir. 2007) ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark v. Collins*, 19 F.3d 959, 966 (5th Cir. 1994)); *Koch*, 907 F.2d at 530 (5th Cir. 1990) (concluding that "counsel is not required to make futile motions or objections.").

The state courts' denial of relief of this claim was not contrary to, or an unreasonable application of federal law. Thus, Butler is not entitled to relief on this claim.

### D. Failure to Impeach Thomas with his Criminal History

Butler next claims his counsel was ineffective for failing to impeach Thomas with his criminal history. The State responds that this claim is speculative and conclusory. It explains that Butler failed to offer any evidence of Thomas's alleged criminal history or that there was any other

impeachment evidence available to defense counsel that was not used at trial or would have changed the outcome.

The State is correct that Butler presents absolutely no evidence demonstrating that Thomas had a criminal history. He does not even identify any supposed conviction. Nor has he shown that any such evidence would have been admissible. The record shows that defense counsel conducted a lengthy and vigorous cross-examination of Thomas and repeatedly attempted to impeach his credibility by pointing out inconsistencies in his 911 calls, his interview with detectives, and his trial testimony.[50] Butler fails to show deficient performance by counsel or any resulting prejudice.

The state courts' denial of relief on this issue was not contrary to, or an unreasonable application of, *Strickland*. Thus, Butler is not entitled to relief on this claim.

### E. Failure to Object to the Prosecution's Vouching for the Credibility of Goff and Investigate and Subpoena her Personnel File

Butler next faults his counsel for failing to object when the prosecution vouched for the credibility of Detective Goff. He claims the prosecution stated that Goff was in good standing with the Jefferson Parish Sheriff's Office and had no disciplinary infractions. He further asserts that his counsel was infective for failing to investigate and subpoena the personnel records of Goff from the Jefferson Parish Sheriff's Office and the Internal Affairs Division. Butler alleges that Goff had a history of misconduct and was not a credible witness.

The State responds that these claims are also speculative and conclusory. It claims that Butler failed to demonstrate that the prosecution made any statement vouching for Goff's credibility. It further claims that Butler has not demonstrated that Goff was not in good standing

---

[50]St. Rec. Vol. 6, Trial Transcript (con't), pp. 232-278, 2/20/14.

with the Jefferson Parish Sheriff's Office or had disciplinary infractions.  The State argues that Butler did not present any evidence of what a subpoena would have revealed or that any alleged evidence of misconduct by Goff would have been admissible at trial.

"A defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *Moawad v. Anderson*, 143 F.3d 942, 948 (5th Cir. 1998) (citation omitted). In other words, a petitioner cannot show prejudice with respect to a claim that counsel failed to investigate without adducing what the investigation would have shown.  *Diaz v. Quarterman*, 239 F. App'x 886, 890 (5th Cir. 2007) (citing *Strickland*, 466 U.S. at 696, in recognizing that some evidence is required to show that "the decision reached would reasonably likely have been different.").  Instead, to prevail on such a claim, the petitioner must provide factual support as to what exculpatory evidence further investigation would have revealed.  *See Moawad*, 143 F.3d at 948; *see also Brown v. Dretke*, 419 F.3d 365, 375 (5th Cir. 2005); *Davis v. Cain*, No. 07–6389, 2008 WL 5191912, at *10 (E.D. La. Dec. 11, 2008) (order adopting referenced Report and Recommendation).

Butler provides no actual evidence supporting his claims that the prosecution made a statement that Goff had no disciplinary infractions and was in good standing with the Sheriff's Office.  Further, the trial transcript of record does not include any such statement made by the prosecution.  Nor does Butler provide any evidence in the record supporting his allegation that Goff had a history of misconduct.  Given the lack of factual support for these claims, Butler has not shown that his counsel was ineffective or any resulting prejudice.

The state courts' denial of relief on these issues was not contrary to, or an unreasonable application of, *Strickland*.  Thus, Butler is not entitled to relief on these claims.

### F.    Failure to File Motions to Suppress

Butler contends that defense counsel should have filed a motion to suppress the jail telephone recordings on the basis that they were unlawfully intercepted or unauthorized.  He further claims counsel should have filed a motion to suppress a twenty minute pre-interview by Goff as non-compliant with the holdings of *Missouri v. Seibert*, 542 U.S. 600 (2004).  The State responds that defense counsel vigorously, albeit unsuccessfully, challenged the admissibility of the jailhouse calls.  It also claims that there was no pre-interview of Butler, and, therefore, *Seibert* is inapplicable.

With regard to the jail telephone calls, the trial transcript reflects that defense counsel filed a motion in limine to exclude the jailhouse telephone calls.[51]  The Trial Court, after listening to the calls and hearing extensive argument from counsel over a period of two days, overruled the objections and found the calls admissible.[52]  While defense counsel's objection to the tapes was based on relevancy rather than unlawful or unauthorized interception, he still had no basis to raise an objection based on the latter.   Under both Federal and Louisiana law, jailhouse telephone recordings are admissible.  *United States v. Jones*, 873 F.3d 482, 495-96 (5th Cir. 2017); *State v. Ducote*, 260 So.3d 627, 631-634 (La. App. 3d Cir. 2018), *writ denied*, 268 So.3d 298 (La. 2019); *State v. Wilson*, 171 So. 3d 356, 363-365 (La. App. 5th Cir. 2015).

---

[51]St. Rec. Vol. 4 of 7, Trial Transcript, p. 6, 2/18/14.  The written motion is not included in the State Court Record.

[52]*Id*., at pp. 6-13; St. Rec. Vol. 5 of 7, Trial Transcript (con't), pp. 25-72, 2/18/14; Trial Transcript, pp. 6-53, 2/19/14.

Butler has shown no reason why counsel should have pursued the filing of a motion on a meritless basis nor has he shown that the outcome would have been different had his counsel filed such a motion. *See Johnson*, 306 F.3d at 255 (counsel is not required to make futile motions or frivolous objections); *Smith v. Puckett*, 907 F.2d 581, 585 n. 6 (5th Cir. 1990) ("Counsel is not deficient for, and prejudice does not issue from, failure to raise a legally meritless claim."); *see also Wood*, 503 F.3d at 413 ("'[f]ailure to raise meritless objections is not ineffective lawyering; it is the very opposite.'") (quoting *Clark*, 19 F.3d at 966); *Koch*, 907 F.2d at 530 (concluding that "counsel is not required to make futile motions or objections.").

As for Butler's claim that his counsel should have filed a motion to suppress the twenty-minute pre-interview, there is no evidence that a "pre-interview" occurred. Rather, the evidence of record reflects that Butler voluntarily surrendered, after which he signed a written waiver of his *Miranda* rights in Detective Goff's presence.[53] Butler then gave an audio recorded statement.[54] According to Goff, that was the only statement he made.[55] The Trial Court found that statement admissible.[56]

Additionally, *Missouri v. Seibert*, 542 U.S. 600 (2004), is inapplicable in this case because Butler did not give a pre-*Miranda* warning statement. As a result, there was no basis for defense counsel to move to suppress Butler's statement under *Seibert*, and counsel was not ineffective for

---

[53]St. Rec. Vol. 4 of 7, Hearing Transcript, pp. 14, 30, 7/25/13; St. Rec Vol. 5 of 7, Trial Transcript, p. 51, 2/20/14.

[54]*Id*., at pp. 14-15; St. Rec Vol. 5 of 7, Trial Transcript, pp. 51-53, 2/20/14.

[55]*Id*., at pp. 15, 30-32.

[56]St. Rec. Vol. 4 of 7, Hearing Transcript, 8/16/13.

failing to do so.  Nor has Butler shown any prejudice as a result of defense counsel's failure to raise the issue.

The state courts' denial of relief on these issues was not contrary to, or an unreasonable application of, *Strickland*.  Thus, Butler is not entitled to relief on these claims.

### G.    Failure to Object to or Move to Reconsider Excessive Sentence

Butler claims his counsel was ineffective in failing to object to and move for reconsideration of the consecutive nature of his sentences.  The State did not address the merits of this claim, but rather argued that it was a procedurally defaulted.  As explained above, this Court rejects the State's claim of procedural default, but nonetheless finds the claim to be without merit for the following reasons.

"The failure to file a motion to reconsider sentence does not by itself constitute ineffective assistance of counsel.  In order to prevail, the petitioner must show a reasonable probability that, but for counsel's error, his sentence would have been different." *Mazique v. Robinson*, Civ. Action No. 17-6675, 2017 WL 6628234, at *10 (E.D. La. Oct. 25, 2017) (citing *Green v. Cain*, Civ. Action No. 97–3206, 1998 WL 259970, at *7 (E.D. La. May 19, 1998)), *adopted*, 2017 WL 6624031 (E.D. La. Dec. 28, 2017).

La. Code Crim. P. art. 883 provides as follows:

> If the defendant is convicted of two or more offenses based on the same act or transaction, or constituting parts of a common scheme or plan, the terms of imprisonment shall be served concurrently unless the court expressly directs that some or all be served consecutively.  Other sentences of imprisonment shall be served consecutively unless the court expressly directs that some or all of them be served concurrently.

The prosecution was based on the murder of Dearmas followed by the intimidation of Thomas and the injuring of Veal in an attempt to prevent them from testifying at trial.  The

Louisiana Fifth Circuit found, as discussed further in section IX, under La. Code Crim. P. art. 493, which includes similar language regarding "the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan that the offenses," that the offenses were sufficiently connected such that they could be tried together.[57] Under article 883, the sentences could run concurrently, "unless the court expressly directs that some or all be served consecutively." Consequently, under Louisiana law, it was within the Trial Court's discretion to impose consecutive sentences and there was no basis to object or move to reconsider the consecutive nature of the sentences.

Nevertheless, even if the Court were to assume that counsel performed deficiently in not objecting or filing a motion to reconsider the sentences, Butler's ineffective assistance claim still fails because he cannot show that he was prejudiced as a result. The Trial Court, in sentencing Butler, noted the bravery of Thomas who "risked all and sacrificed everything" by testifying at trial.[58] The Trial Court explained:[59]

> You and only you are responsible for where you are today, and you need to own that.
> It's your own bad decisions that have brought you here. And you know that those who love you warned you about the dangerous path that you were on, and you chose not to listen. And now you're in the situa – you've put yourself, you and only you have put yourself in the situation you're in today and nothing else. And it's time for you to take responsibility for your acts.
> There's not a question in my mind that this case presents a terrible tragedy. A young man, Durrell Dearmas is dead, riddled with your bullets. And now another young man, you, Mr. Butler, must spend the rest of his life behind bars. No doubt this is a tragedy, and it makes me very sad. But instead of blaming others for what you've done to yourself, I hope that you will warn your friends, those who are on the same destructive path that you were on to change their ways, not to do what you have done, not to end up where you are going. It's time for you to do the right

---

[57]*Butler*, 171 So. 3d at 1288-1289; St Rec. Vol. 6 of 7, 5th Cir. Opinion, 15-KA-89, pp. 6-7 7/29/15.
[58]St. Rec. Vol. 6 of 7, Sentencing Transcript, p. 8, 3/20/14.

[59]*Id*., at pp. 8-9.

thing, Mr. Butler.  It's time for you to stand like a man and do the right thing.  And it is my sincere hope and prayer that you will.

Based on the Trial Court's comments, Butler has not shown a reasonable probability that, had counsel objected or filed a motion to reconsider sentence, the motion would have been granted or the sentence would have been found excessive on appeal.

The denial of relief on this issue was not contrary to or an unreasonable application of *Strickland*.  Thus, Butter is not entitled to relief on this claim.

## IX.    Sever the Counts

Butler next claims that the Trial Court erred in failing to sever counts two and three from count one.  He claims that the crime of second-degree murder is sufficiently different that the crime of witness intimidation and the crimes should have been tried separately.

The State responds that this claim is non-cognizable as it rests upon Louisiana state law relative to joinder and severance of offenses.  The State alternatively argues that Butler has not demonstrated that the joinder of the offenses for trial rendered his trial fundamentally constitutionally unfair.

Butler raised this claim on direct appeal.  In the last reasoned opinion, the Louisiana Fifth Circuit found that all three counts were sufficiently connected because the witnesses to the murder were subjected to intimidation, the evidence as to each counts was presented in a logical and simple matter, and the Trial Court charged the jury separately as to each offense, explaining the burden of proof in detail.[60]  It further found that even had the Trial Court severed the counts, the evidence regarding Butler's involvement of the intimidation of witnesses would have been admissible.[61]

---

[60]*Butler*, 171 So. 3d at 1288-89; St. Rec. Vol. 6 of 7, 5th Cir. Opinion, 15-KA-89, 7/29/15.

As an initial matter, to the extent Butler argues that the Trial Court erred as a matter of state law in denying the severance, he has failed to state a cognizable federal claim. As previously explained, a federal habeas court does not sit to correct errors made by state courts in interpreting and applying state law. *Swarthout,* 562 U.S. at 219; *Narvaiz*, 134 F.3d at 695 (citing *Estelle*, 502 U.S. at 67-68), *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990), and *West v. Johnson*, 92 F.3d 1385, 1404 (5th Cir. 1996)). "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Estelle*, 502 U.S. at 67-68; *see also Molo v. Johnson*, 207 F.3d 773, 776 n.9 (5th Cir. 2000) ("Federal habeas review does not extend to state court conclusions of state law."); *Hogue v. Johnson*, 131 F.3d 466, 506 (1997) (a disagreement as to state law is not cognizable on federal habeas review). The state courts' application and interpretation of Louisiana law on severance of offenses are not bases for federal habeas corpus relief.

Instead, federal habeas courts sit only to address violations of constitutional magnitude, including due process violations that render the criminal proceedings fundamentally unfair. *Lisenba v. People of the St. of Cal.*, 314 U.S. 219, 236-37 (1941); *Peters v. Whitley*, 942 F.2d 937, 940 (5th Cir. 1991) (Habeas corpus review is proper only to determine whether a state trial judge's error is so extreme as "to render the trial fundamentally unfair or violate an explicit constitutional right.")

Construing Butler's challenge to the denial of his request for a severance as a due process argument presents a mixed question of law and fact for this Court. *Manning v. Warden, Louisiana*

---

[61]*Id*., at 1289 (citing *State v. Parent*, 836 So.2d 494, 506–507 (La. App. 5th Cir. 2002) and *State v. Lewis*, 125 So.3d 1252, 1263 (La. App. 4th Cir. 2013), *writ denied*, 141 So.3d 279 (La. 2014).

*St. Penitentiary*, 786 F.2d 710, 711-12 (5th Cir. 1986) (failure of state court to sever counts presents a due process question of fundamental fairness on habeas review) (citing *Tifford v. Wainwright*, 588 F.2d 954, 957 (5th Cir. 1979) (denial of motion to sever codefendant's trial from that of other codefendants, under facts of the case, made trial "fundamentally unfair")).  Whether a petitioner's due process rights were violated is a question of law.  *Richardson v. Quarterman*, 537 F.3d 466, 472 (5th Cir. 2008).  This Court must determine if the state court's decision to deny the severance motion was contrary to, or involved an unreasonable application of, Supreme Court precedent concerning petitioner's due process rights.

It is settled that "[s]everance is within the discretion of the trial court and is required only in cases of compelling prejudice."  *Breeland v. Blackburn*, 786 F.2d 1239, 1241 (5th Cir. 1986) (citing *United States v. MacIntosh*, 655 F.2d 80, 84 (5th Cir. 1981)).  For purposes of habeas review, simultaneous trial of more than one offense must have rendered the state trial fundamentally unfair before a petitioner can obtain federal habeas relief.  *Alvarez v. Wainwright*, 607 F.2d 683, 685 (5th Cir. 2003) (quoting *Triblett v. Wainwright*, 540 F.2d 840, 841 (5th Cir. 1976)).  "The burden of demonstrating prejudice is a difficult one, and the ruling of the trial judge will rarely be disturbed by a reviewing court."  *Breeland*, 786 F.2d at 1241 (citation omitted).

Louisiana law provides for the joinder of criminal acts in one bill of information or indictment under the following circumstances:

> Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan, provided that the offenses joined must be triable by the same mode of trial.

La. Code Crim. Proc. art. 493.

In addition, La. Code Crim. P. art. 493.2 permits joinder of criminal charges based on sentencing exposure:

> [O]ffenses in which punishment is necessarily confinement at hard labor may be charged in the same indictment or information with offenses in which the punishment may be confinement at hard labor, provided that the joined offenses are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.

Louisiana law provides that the sentences for both second degree murder and intimidation of witnesses can be served at hard labor.   La. Rev. Stat. § 14:30.1(B); La. Rev. Stat. § 14:129.1(C)(2).

In Louisiana, "the district attorney has entire charge and control of every criminal prosecution instituted or pending in his district, and determines whom, when, and how he shall prosecute." La. Code Crim. Proc. art. 61.  The prosecutor's decision to join criminal charges in a bill of information is generally not subject to objection by the defense.  *See State v. Brooks*, 541 So.2d 801, 810-11 (La. 1989) (citing La. Code Crim. P. art. 61 as providing broad discretion to the district attorney in determining whether to sever counts in an indictment); *State v. Burnett*, No. 2007-KA-2523, 2008 WL 2064975, at *3-4 (La. App. 1st Cir. 2008) (unpublished) (finding that the district attorney has the discretion to prosecute offenses separately or in aggregate) (citing *State v. Joles*, 492 So.2d 490, 495 (La. 1986) (addressing joinder of theft counts)).

However, "[i]f it appears that a defendant or the state is prejudiced by a joinder of offenses in an indictment or bill of information, or by such joinder for trial together, the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires." La. Code Crim. P. art. 495.1; *State v. Burks*, 905 So.2d 394, 399 (La. App. 5th Cir. 2005).  A defendant claiming prejudice has a heavy burden to prove that severance of the charges is

warranted. *State v. Jones*, 33 So.3d 306, 325 (La. App. 5th Cir. 2010) (citing *Burks*, 905 So.2d at 399).

In Butler's case, the record discloses no requirement under state law that any count in the bill of information be severed and tried separately as a matter of Louisiana law. Butler was charged with one count of second-degree murder and two counts of intimidating, impeding, or injuring a witness, both of which were felonies appropriately brought in the same bill of information. Butler does not challenge the fact that each of the charges against him were of the same character (felonies) and were triable by the same mode of trial and could be charged in the same bill of information. *See* La. Code Crim. Proc. art. 782; *see also* La. Rev. Stat. § 14:2 (A felony, under Louisiana law, "is any crime for which the offender may be sentenced to death or imprisonment at hard labor.").

Furthermore, under Louisiana law, "there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood the jury will be confused by the evidence of more than one crime." *State v. Lewis*, 557 So.2d 980, 984 (La. App. 4th Cir. 1990). In determining whether joinder of two or more offenses would result in prejudice, the Louisiana courts consider the following factors:

> (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges and evidence; (3) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, considering the nature of the charges, the charging of several crimes would make the jury hostile.

*State v. Lewis*, 736 So.2d 1004, 1015 (La. App. 4th Cir. 1999).

Butler has not established that the jury was impacted in any of the ways listed above. The trial transcript reflects that the State's presentation of the evidence and witnesses was organized in

a manner that distinguished between the second-degree murder and intimidation of witness offenses. The facts of the offenses were not complex or confusing and were tied together through the common thread of the witnesses present at the time of the murder, who identified Butler as the perpetrator or as being present, being threatened, and, in Veal's case, injured, at Butler's direction. There was no showing that the jury was unable to understand and evaluate the elements of each offense, inferred a criminal disposition, or was hostile as a result of the joinder of the offenses.

The record is devoid of anything that might reflect the possibility that his trial was so fundamentally unfair that his due process rights were violated. Butler has failed to establish a due process violation arising from joinder of the offenses in the bill of information or at trial. The state courts' denial of relief on this claim was not contrary to, or an unreasonable application of, Supreme Court law. As such, Butler is not entitled to relief on this claim.

## X.    **"Other Crimes" Evidence**

Butler claims the Trial Court erred in admitting evidence of "other crimes," specifically unused bullets found in his room in his grandmother's house. Butler claims that most of the bullets recovered were not the same caliber as those used in the murder and that the bullets were admitted based on the hearsay statement by Detective Goff as to the identification of his room by his grandmother. The State claims this issue is not cognizable. Alternatively, it claims that Butler fails to show that the admission of the "other crimes" evidence resulted in a fundamentally unfair trial.

Butler raised this issue on direct appeal. The Louisiana Fifth Circuit found there was no objection to the use of Butler's grandmother's statement regarding the location of his bedroom grandmother and that the ammunition did not constitute "other crimes evidence as there is no crime

for possession of ammunition."[62]    It further found that even if the ammunition constituted inadmissible "other crimes" evidence, its admission was harmless in light of the testimony from Thomas and Veal and the jail telephone conversations.[63] This was the last reasoned opinion as the Louisiana Supreme Court denied relief without reasons.[64]

To the extent Butler raises this issue as a violation of state law, his claim must fail. Habeas corpus review is limited to questions of constitutional dimension, and federal courts generally do not review the admissibility of evidence under state law. *Jones v. Cain*, 600 F.3d 527, 536 (5th Cir. 2010); *Lampton v. Cain*, 268 F. App'x 367, 368 (5th Cir. 2008) (citing *Jernigan v. Collins*, 980 F.2d 292, 298 (5th Cir. 1992)). States are free to implement procedures regarding the admission of evidence, provided that those procedures do not infringe on a constitutional guarantee. *Riggins v. Nevada*, 504 U.S. 127, 147 (1992); *Burgett v. Texas*, 389 U.S. 109 (1967). Therefore, federal courts do not sit to review the propriety of state court evidentiary rulings, unless the proceedings violate due process such that the violation renders the criminal proceeding fundamentally unfair. *Riggins*, 504 U.S. at 147 (quoting *Lisenba*, 314 U.S. at 236-37); *see Swarthout*, 562 U.S. at 219 (federal habeas review does not lie for errors of or in applying state law); *see also United States v. Derden*, 978 F.2d 1453, 1458 (5th Cir. 1992) (errors of state law, including evidentiary errors, are not cognizable in habeas corpus, as such, and only rise to constitutional dimension if they so infuse the trial with unfairness as to deny due process such that they more likely than not caused a suspect verdict); *Peters*, 942 F.2d at 940  (habeas review is

---

[62]*Butler*, 171 So. 3d at 1289-90; St. Rec. Vol. 6 of 7, 5th Cir. Opinion, 15-KA-89, 7/29/15.

[63]*Id.*, at 1290; St. Rec. Vol. 6 of 7, 5th Cir. Opinion, 15-KA-89, 7/29/15.

[64]*Butler*, 207 So. 3d at 408; St. Rec. Vol. 7 of 7, St. Rec. Vol. 7 of 7, La. S. Ct. Order, 2015-KO-1608, 10/10/16.

proper only to determine whether a state trial judge's error is so extreme as to render the trial fundamentally unfair or violate an explicit constitutional right).

The question of due process in the criminal proceeding presents a mixed question of law and fact. *Dickson v. Sullivan*, 849 F.2d 403, 405-06 (9th Cir. 1988). Under the applicable standard of review, this Court therefore must determine if the state courts' decision is contrary to or involved an unreasonable application of Supreme Court precedent.

In *Lisenba*, the Supreme Court stated that the denial of due process "is the failure to observe that fundamental fairness essential to the very concept of justice. In order to declare a denial of it we must find that the absence of that fairness fatally infected the trial; the acts complained of must be of such quality as necessarily prevents a fair trial." *Lisenba*, 314 U.S. at 236. In keeping with this principle, the United States Fifth Circuit Court of Appeals has held that the admission of prejudicial evidence is fundamentally unfair so as to justify federal habeas corpus relief only if it is "material in the sense of a crucial, critical, highly significant factor." *Hills v. Henderson*, 529 F.2d 397, 401 (5th Cir. 1976) (quotation omitted); *Givens v. Cockrell*, 265 F.3d 302 (5th Cir. 2001); *Porter v. Estelle*, 709 F.2d 944, 957 (5th Cir. 1983).

In this case, Butler fails to establish that the references to the bullets were prejudicial to his defense or that they otherwise impacted the verdict. A reading of the trial transcript shows that Detective Goff testified that two witnesses gave the last known address for Butler at 220 Glendella Drive in Avondale.[65] According to Goff, Butler's grandmother told her which room he was staying in in the house.[66] Goff testified that multiple live cartridges of ammunition were found in the

---

[65]St. Rec. Vol. 5 of 7, Trial Transcript, p. 45, 2/20/18; St. Rec. Vol. 6 of 7, Trial Transcript (con't), p. 114, 2/20/18.

[66]*Id*., at p. 48; St. Rec. Vol. 6 of 7, Trial Transcript (con't), p. 114-116, 2/20/18.

room.[67]  She specifically testified that "[m]ost of them weren't even the caliber we were looking for; we just collected them."[68]  She testified they did, in fact, find some nine-millimeter bullets, but also found "22," "380," and "38" rounds.[69]  Goff reiterated that "most of them weren't even the caliber used in the shooting."[70]

Butler has not established that references to the bullets found during the execution of the search warrant were inadmissible, prejudicial, or admitted in violation of the Due Process Clause. Without some showing of this nature, he "has no basis for any alleged due process violation" or for a denial of a fundamentally fair trial.  *See Robinson v. Whitley*, 2 F.3d 562, 567 (5th Cir. 1993); *see also Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998).  The state courts' denial of relief on this issue was not contrary to or an unreasonable application of Supreme Court law.  As such, Butler is not entitled to relief on this claim.

## XI.    <u>Recommendation</u>

For the foregoing reasons, it is **RECOMMENDED** that Butler's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from

---

[67]*Id*., at pp. 46, 48-49; St. Rec. Vol. 6 of 7, Trial Transcript (con't), p. 113-14, 2/20/18.

[68]St. Rec. Vol. 6 of 7, Trial Transcript (con't), p. 116, 2/20/18

[69]*Id*., at 116, 118.

[70]*Id.*, at p. 117.

attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[71]

New Orleans, Louisiana, this 28th day of January, 2020.

**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[71]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.